**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHERN DIVISION**

| | |
|---|---|
| **MARTHA A. RODRIGUEZ,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| | **Case No. 1:11-cv-29-CW-PMW** |
| **v.** | |
| **MICHAEL J. ASTRUE** | |
| **Commissioner of Social Security,** | **District Judge Clark Waddoups** |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court is Martha Rodriguez's ("Plaintiff") appeal of Michael J. Astrue's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  *See* 42 U.S.C. §§ 401-434.  After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case.

## BACKGROUND

Plaintiff is a 54-year-old woman who is obese, has completed ninth grade, and has some secretarial training.  Plaintiff last worked in 2008, and her past relevant work included work as a telephone representative, a directory assistance operator, and a cashier.  Plaintiff asserts that she was forced to quit her work because she began to suffer blurred vision and because she had

---

[1] *See* docket no. 23.

trouble staying awake while on the job.  Plaintiff contends that the side effects of her medication make her drowsy during the day.  Plaintiff has been treated for, among other things, diabetes, depression, and joint pain.

In October 2008, Plaintiff applied for DIB, alleging a disability onset date of June 1, 2008.[2]  Plaintiff's application was denied initially and upon reconsideration.[3]  In February 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[4] and that hearing was held on January 21, 2010.[5]  On March 19, 2010, the ALJ issued a written decision denying Plaintiff's claims.[6]  On December 13, 2010, the Appeals Council denied Plaintiff's request for review,[7] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. §§ 405(g); 20 C.F.R. § 404.981.

On February 11, 2011, Plaintiff filed her complaint, and this case was assigned to Judge Waddoups.[8]  After receiving an extension of time,[9] the Commissioner filed his answer on

---

[2]  *See* docket no. 14, Administrative Record ("Tr. _____") 133-34.

[3]  *See* Tr. 65, 67.

[4]  *See* Tr. 78-79.

[5]  *See* Tr. 30-64.

[6]  *See* Tr. 11-27.

[7]  *See* Tr. 1-3.

[8]  *See* docket no. 3.

[9]  *See* docket nos. 5-6.

September 8, 2011.[10]  The court received the administrative record that same day.[11]  Plaintiff filed

her opening brief on October 31, 2011.[12]  The Commissioner filed his answer brief on December

29, 2011.[13]  On January 9, 2012, Plaintiff filed her reply brief.[14]  On March 30, 2012, Judge

Waddoups entered the order referring the case to Judge Warner pursuant to 28 U.S.C.

§ 636(b)(1)(B).[15]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and

citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation

omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor

substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

---

[10]  *See* docket no. 13.

[11]  *See* docket no. 14.

[12]  *See* docket no. 18.

[13]  *See* docket no. 21.

[14]  *See* docket no. 22.

[15]  *See* docket no. 23.

Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751

(quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iii).  At the fourth step, the

claimant must show that the impairment prevents performance of his "past relevant work."  20

C.F.R. § 404.1520(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not

disabled."  *Williams*, 844 F.2d at 751.  If, however, the claimant is not able to perform his

previous work, he "has met his burden of proof, establishing a prima facie case of disability."  *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."  *Id*.  At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work

in the national economy in view of his age, education, and work experience."  *Id*.; *see* 20 C.F.R.

§ 404.1520(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other

work," 20 C.F.R. § 404.1520(a)(4)(v), he is not disabled.  If, on the other hand, it is determined

that the claimant "cannot make an adjustment to other work," *id*., he is disabled and entitled to

benefits.

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff

argues that the ALJ erred:  (1) by improperly evaluating the opinions of one of Plaintiff's treating

sources, (2) in his determination at step four of the sequential evaluation process, and (3) by

failing to consider all of Plaintiff's impairments in determining Plaintiff's RFC.  The court will

address each argument in turn.

## I. Treating Source Opinions

Plaintiff argues that the ALJ failed to properly evaluate the opinions of one of Plaintiff's

treating physicians, Dr. Dustin Child.

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight.  To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

> Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527].  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted)

(sixth alteration in original); *see also* 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR")

96-2p.  An ALJ is not required to discuss every factor set forth in the relevant regulations.  *See*

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that when an ALJ does not

discuss every factor, it "does not prevent this court from according his decision meaningful

review").

As with other evidentiary matters, when an ALJ is considering medical opinion evidence,

it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*,

*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244,

1247 (10th Cir. 1988).  In addition, a treating source's opinion that a claimant is disabled "is not

dispositive because final responsibility for determining the ultimate issue of disability is reserved

to the [Commissioner]."  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029

(10th Cir. 1994); *see also* 20 C.F.R. § 404.1527(d).

Plaintiff argues that the ALJ erred in the weight he assigned to Dr. Child's opinions.  That

argument is without merit.

The ALJ concluded that Dr. Child's opinions about Plaintiff's limitations were not

entitled to controlling weight because they were not well supported by medically acceptable

clinical and laboratory diagnostic techniques *and* because they were inconsistent with Dr. Child's

own treatment reports.[16]  *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p.  Indeed, Dr. Child's

---

[16] *See* Tr. 22.

treatment notes demonstrate that he examined Plaintiff on several occasions and that he considered Plaintiff to be healthy, well nourished, and in no apparent distress.[17]  The ALJ did not err by concluding that Dr. Child's opinions about Plaintiff's limitations were not entitled to controlling weight.

The court now turns to the deference and weight the ALJ gave to Dr. Child's opinions about Plaintiff's limitations.  *See* 20 C.F.R. § 404.1527(c).  In reaching his determination that Dr. Child's opinions were entitled to diminished weight,[18] the ALJ properly relied upon the following factors.  First, the ALJ noted that Dr. Child's opinions about Plaintiff's restrictions were inconsistent with Dr. Child's own treatment notes and other medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).  Second, the ALJ stated that Dr. Child's opinions about Plaintiff's limitations were inconsistent with Plaintiff's activities of daily living, which included caring for her personal needs, cooking, doing laundry, housecleaning, driving, shopping, watching television, attending church, and mowing lawns.[19]  *See* 20 C.F.R. § 404.1527(c)(4). Third, the ALJ noted that Plaintiff's January 2012 visit to Dr. Child was for the purpose of having a form completed for her disability claim.[20]  *See, e.g.*, 20 C.F.R. § 404.1502; *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).  Finally, the ALJ correctly noted that Dr. Child's opinions about Plaintiff's ability to work

---

[17]  *See* Tr. 247, 358, 366, 368, 370.

[18]  *See* Tr. 22-23.

[19]  *See* Tr. 20, 52-54, 162-68, 366.

[20]  *See* Tr. 22.

were not dispositive because the determinations about Plaintiff's disability and RFC are issues reserved to the Commissioner.[21]  *See* 20 C.F.R. § 404.1527(d); SSR 96-5; *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."); *Castellano*, 26 F.3d at 1029.

Based on the foregoing, the court concludes that the ALJ did not err in concluding that Dr. Child's opinions were not entitled to controlling weight.  Further, the court has determined that ALJ did not err in concluding that Dr. Child's opinions about Plaintiff's limitations were entitled to diminished weight because the ALJ relied upon the proper factors and provided specific, legitimate reasons in support of that conclusion.

## II.  Step Four

In order for an ALJ's determination that a claimant can perform her past relevant work to be proper, the ALJ's decision must contain the following findings of fact:

1.  A finding of fact as to the individual's RFC.
2.  A finding of fact as to the physical and mental demands of the past job/occupation.
3.  A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62; *see also Winfrey v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir. 1996).

The court concludes that the ALJ made all of those required findings.  First, the ALJ made the required finding about Plaintiff's RFC, concluding that Plaintiff could perform light work.  Second, the ALJ properly relied on the testimony of a vocational expert ("VE") to

---

[21]  *See id*.

9

describe the physical and mental demands of Plaintiff's past relevant work.  *See* 20 C.F.R. § 404.1560(b)(2).  Here, the VE testified that Plaintiff's past work as a telephone representative and directory assistance operator constituted sedentary work, while her past work as a cashier constituted light work.  Finally, the ALJ properly relied on the VE's testimony to determine whether an individual with Plaintiff's RFC could perform Plaintiff's past work.  In this case, the VE testified that an individual with Plaintiff's RFC could perform Plaintiff's past sedentary work as a telephone representative and directory assistance operator, but not her past light work as a cashier.

Plaintiff argues that an error exists at step four because the ALJ concluded that Plaintiff could perform her past sedentary work, while at the same time the ALJ assessed Plaintiff as being able to perform a limited range of light work.  That argument is without merit.  As noted by the Commissioner, sedentary work is less physically demanding than light work.  As such, when the ALJ concluded that Plaintiff could perform her past sedentary work, he simply concluded that Plaintiff could perform jobs that were less physically demanding than her maximum capacity for work.

For these reasons, the court concludes that the ALJ did not err at step four of the sequential evaluation process.

### III.  Consideration of Impairments in RFC Determination

Plaintiff's argument on this point consists of two parts.  Plaintiff argues that the ALJ erred in his determination of Plaintiff's RFC by failing to consider the effects of (A) Plaintiff's vision-related impairments and (B) the side effects of Plaintiff's medications.

### A.  Vision-Related Impairments

Plaintiff contends that the ALJ failed to consider Plaintiff's vision-related impairments in determining Plaintiff's RFC.  The court disagrees.  In short, the ALJ determined that Plaintiff's subjective complaints about vision-related impairments were not credible.

In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id*. (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

SSR 96-7p clarifies the standards an ALJ must apply when evaluating the credibility of an individual's statements, including his or her allegations of pain.  *See* SSR 96-7p.  In addition to the objective medical evidence, an ALJ should consider the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> 7.      Any other factors concerning the individual's functional
>         limitations and restrictions due to pain or other symptoms.

*Id.*; *see* 20 C.F.R. § 404.1529(c); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

In this case, the ALJ considered proper factors in reaching the determination that Plaintiff's testimony and her subjective complaints about her vision-related impairments were not fully credible.  First, the ALJ specifically noted that the documentary evidence established that Plaintiff had "intact monofilament and visual fields" and that, while Plaintiff complained of vision problems, she also admitted that she had no diabetic disease of the eyes as far as she knew.[22]  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  Second, the ALJ specifically noted Plaintiff's activities of daily living, which included reading (with bifocals), watching television, and driving on a regular basis, all of which are inconsistent with severe vision problems.[23]  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR; 96-7p.  Furthermore, the record demonstrates that Plaintiff had a vision screening for diabetic retinopathy at the recommendation of Dr. Child in October 2007, and the screening showed that she had perfect (20/20) vision in both eyes with correction and that she required no medical treatment for her eyes.[24]  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.  And, the state agency physician, Dr. Lewis J. Barton, examined all of Plaintiff's medical records, and explicitly stated that her allegations of severe

---

[22]  Tr. 19.

[23]  *See* Tr. 48, 52-56.

[24]  *See* Tr. 225.

visual limitations were not credible due to a lack of objective findings and the fact that she still drove and watched television.[25]  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi); SSR 96-7p.

Plaintiff also asserts that the ALJ had a duty to develop the record with respect to Plaintiff's vision-related impairments.  Again, the court disagrees.  Although the ALJ has the duty to develop the record, "it is not the ALJ's duty to become the claimant's advocate," and the claimant bears the ultimate burden of proving his or her disability.  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).  The ALJ's duty to develop the record applies only to "material issues."  *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) (quotations and citations omitted).

In light of the foregoing discussion on this issue, the court concludes that the ALJ had no duty to develop the record further with respect to Plaintiff's vision-related impairments.  To the contrary, it appears that Plaintiff failed to carry her burden of establishing that her vision-related impairments were in fact disabling.  Accordingly, the court rejects Plaintiff's argument with respect to development of the record.

For these reasons, the court concludes that the ALJ did not err in his treatment of Plaintiff's vision-related impairments.

### B.  Medication Side Effects

Plaintiff also argues that the ALJ failed to account for the side effects of Plaintiff's medications in determining Plaintiff's RFC.  That argument fails.  As he did with Plaintiff's

---

[25]  *See* Tr. 303-10.

vision-related impairments, the ALJ determined that Plaintiff's subjective complaints about the side effects of her medications were not credible.

Although Dr. Child indicated that Plaintiff experienced some "sleepiness" from her medication, he did not indicate the extent, if any, of the functional limitations that stemmed from it.[26]  Other than that piece of evidence, the only other evidence regarding the extent of any functional limitations caused by side effects from Plaintiff's medications consisted of Plaintiff's testimony, which the ALJ found to be not credible.  The ALJ specifically noted that despite Plaintiff's claims of "an extremely limited lifestyle due to her physical impairments," (including the need to lie down for three hours during an eight-hour day), throughout the time period at issue she was able to independently carry on her activities of daily living, including caring for her personal needs, cooking, doing laundry, housecleaning, driving, shopping, watching television, handling finances, attending church regularly, and mowing lawns.[27]  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR; 96-7p.  The ALJ concluded that "all of these activities are highly inconsistent with [Plaintiff's] allegation of chronic daily pain and *fatigue* and of total disability."[28]

To the extent that Plaintiff attempts to reargue the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal because it is not this court's role to reweigh the evidence before the ALJ.  *See Madrid*, 447 F.3d at 790.  Indeed, it is the ALJ's

---

[26]  Tr. 345.

[27]  Tr. 20.

[28]  *Id*. (emphasis added).

14

role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247. From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)).

For these reasons, the court concludes that the ALJ did not err in his treatment of the side effects of Plaintiff's medications.

## CONCLUSION AND RECOMMENDATION

The court concludes that all of Plaintiff's arguments fail. Accordingly, **IT IS HEREBY RECOMMENDED** that the Commissioner's decision in this case be **AFFIRMED**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 17th day of September, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

15